IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LIBERTARIAN PARTY
OF ARKANSAS, et al.                                                PLAINTIFFS

v.                              Case No. 4:19-cv-00214-KGB

JOHN THURSTON, in his official
capacity as Secretary of State for
the State of Arkansas,                                             DEFENDANT

---

# ATTACHMENT

# PLAINTIFFS' EXHIBIT "2"

# AFFIDAVIT OF JAMES C. LINGER

---

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| LIBERTARIAN PARTY<br>OF ARKANSAS, et al. | | PLAINTIFFS |
| v. | Case No. 4:19-cv-00214-KGB | |
| JOHN THURSTON, in his official<br>capacity as Secretary of State for<br>the State of Arkansas, | | DEFENDANT |

<u>AFFIDAVIT OF JAMES C. LINGER</u>

James C. Linger, of legal age, being first duly sworn upon oath, deposes and states:

1. I am a resident of Tulsa, Oklahoma, and make this Affidavit with the knowledge that it is to be used for the purpose of evaluating a motion to obtain attorney fees on behalf of W. Whitfield Hyman and myself, counsel for the Plaintiffs in the above-referenced case.

2. I practice law and have an office in Tulsa, Oklahoma, and am a member of the Bar of the State of Oklahoma, the Seminole Nation, the United States District Court for the Northern District of Texas, Northern, Eastern, and Western Districts of Oklahoma, and the United States Court of Appeals for the 6th Circuit, 8th Circuit, 9th Circuit, and 10th Circuit, and the Supreme Court of the United States. I was admitted *pro hac vice* to the United States District Court for the Eastern District of Arkansas for the instant case. I have been a practicing lawyer since April of 1977, and have since that time been in the continuous practice of law, with extensive trial and appellate experience in both state and federal courts. The bulk of my experience and specialization has been in the areas of constitutional and civil rights litigation, legal malpractice, probate, personal injury, business contract and tort law, and criminal defense law. I have represented and advised various political parties and political groups in regard to ballot access laws, voter registration laws, ballot format laws, related Title 42, U.S. Code, § 1983 cases

thereon, First Amendment civil rights cases, and cases involving litigation concerning challenges to what is known as the Fully Informed Voter Amendment as it relates to the attempt to have a constitutional amendment approving term limits added to the United States Constitution. Among my former election law clients are Ralph Nader, Dr. Benjamin Spock, former Senator Eugene McCarthy, Dr. Lenora Fulani, former Congressman Ron Paul, former Governor Gary Johnson, former Congressman Bob Barr, and additional minor political parties besides the Libertarian, such as the Constitution, Green, Reform, Populist, Prohibition, Socialist Workers, New Alliance, Natural Law, Socialist, and Rainbow Coalition.

    3. I was first contacted on February 20, 2019, about challenging the ballot access laws of Arkansas as they relate to the requirements for petitioning numbers, petition deadlines and petitioning time period for new unrecognized political parties in Arkansas. I have represented the Libertarian Party of Arkansas before and was able to obtain an Arkansas lawyer to handle the case as local counsel and assist me. However, I would be doing the bulk of the work. After review of the Arkansas election laws as they relate to petitioning as to numbers required, petition deadlines, petitioning time periods, and other related requirements for new political parties, including the requirement that new political parties nominate at a convention rather than a primary, and the requirements for candidate filings and related matters, I determined that a challenge under 42 U.S.C. § 1983 to Arkansas's aforesaid election laws as same relate to new political parties and the particular problems created there would probably be successful if filed in a timely manner so that the Court could make a ruling without disrupting the elections and the printing of the ballots.

    4. I obtained the necessary services of local counsel in Fort Smith, Arkansas, namely: W. Whitfield Hyman, for the purpose of serving as local counsel and assisting me in the

presentation of a § 1983 civil rights action challenging the Arkansas election laws for new political parties and the particular timing and requirements for petitioning for party recognition in Arkansas. I made contact with Mr. Hyman and discussed the case and his respective duties with him. The individuals supporting the challenge to the Arkansas election laws in question were members of the Libertarian Party of Arkansas, which was formerly recognized under Arkansas law. One of the individuals, Dr. Michael Pakko, was Chair of the Libertarian Party of Arkansas, and knew that the Libertarian Party of Arkansas might face similar problems in the future. My local counsel, W. Whitfield Hyman, is a member of the Libertarian Party of Arkansas.

5. The supporters of the instant lawsuit were able to provide $5,000.00 for a retainer for attorney fees and costs. I agreed to represent them on the aforementioned basis with a contract that would reimburse them the $5,000.00 if and to what extent we were successful and recovered attorney fees and costs pursuant to 42 U.S.C. § 1988 but would not charge them further for any attorney fees, costs, or expenses if we were unsuccessful in the case. While there were expenses for plane fare, transportation from the airport to the hotel, and hotel bill for my trip to St. Louis, Missouri, to argue before the Eighth Circuit Court of Appeals, I am not requesting any reimbursement for my transportation and hotel expenses for arguing before the Eighth Circuit because my past experience with the Eighth Circuit is that such expenses are not allowed as recoverable costs. It is my practice to require significant legal retainers only on those civil rights cases which I feel are either long shots or where the clients are financially well off. In most cases, civil rights litigation under 42 U.S.C. § 1983 is analogous to contingency fees in personal injury litigation, wherein the lawyer must prevail for his client in order to receive remuneration.

6. I am attaching a copy of my time sheets for the instant case to this Affidavit of mine, marking it as Exhibit "3", and incorporating it in this Affidavit as though fully set forth herein. These time sheets are taken from my time records which were kept by me contemporaneously with the work performed in this case and maintained in my office's billing records.

7. I have deleted those hours spent on the case which related to nonproductive matters as well as not listing most of the extensive work assistance I received from my legal assistant. I have not requested any fees in regard to non-charged work, but have represented it in my time sheets by the notation N/C for no charge with the time performed by me set forth after the description of the work done for comparison by the Court. Further, I have requested $300.00 an hour for my work in the instant case, except as to travel time between Tulsa, Oklahoma, and Little Rock, Arkansas, or St. Louis, Missouri, for which I am requesting $250.00 an hour. My normal office hourly rate for non-election law cases has been $300.00 per hour beginning in 2018.

8. I was assisted in my preparation for this case by the fact that I had previously been Counsel in the cases of *Moore v. Martin*, 854 F.3d 1021 (8th Cir. 2017); *Moore v. Thurston*, 928 F.3d 753 (8th Cir. 2019); and *Libertarian Party of Arkansas v. Martin*, 876 F.3d 948 (8th Cir. 2017) in the U.S. District Court for the Eastern District of Arkansas and before the Eighth Circuit, which allowed me to become familiar with both the Local Rules and some of the election laws involved in the case at bar. I felt the fact situation in the instant case was stronger than the fact situations presented by the foregoing cases.

9. My time sheets for the instant case (Plaintiffs' Exhibit "3") reflect a total of 224.2 hours worked by myself (minus 13.0 hours for which I am not charging or requesting compensation herein). Therefore, I am requesting 211.2 hours in compensatable time for my

4

work in this case. The rate of compensation I am requesting is as follows: 191.9 hours at $300.00 per hour for work done from February 20, 2019, to October 12, 2022, and 19.3 hours at $250.00 per hour for travel time between Tulsa, Oklahoma and Little Rock, Arkansas, or St. Louis, Missouri, for a total attorney fee of $62,395.00. My normal hourly rate for office work performed by myself is $300.00 per hour and is regularly billed and paid by my clients. I sometimes charge a higher hourly rate when I am required to set aside other work and do an expedited case or in an area where I believe I have a great deal of experience and specialization such as is done in an election law case. I have previously been awarded attorney fees in election law cases in Federal Court in Arkansas in the amount of $300.00 per hour for work on the case, but with a rate of $250.00 per hour for travel time. In evaluating my expertise and my hourly rates requested, I would call the Court's attention to what U.S. District Judge James M. Moody, Jr. of the U.S. District Court for the Eastern District of Arkansas stated in the case of *Moore v. Thurston*, Case No. 4:14-cv-00065—JM in an order filed on October 14, 2019:

> As the Court has stated on many occasions, the constitutional issues involved in election rights cases are difficult. Few attorneys have the expertise in this area of the law or the willingness to take on such a case. Mr. Linger has appeared before this Court many times on behalf of plaintiffs in election rights cases. The Court has found him to be knowledgeable of the constitutional, statutory, and factual issues involved in each case without exception. His $300.00 hourly fee is reasonable. The billing records that accompany Plaintiffs' motion for attorney fees reflect total time of 174.5 hours spent on the case by Mr. Linger. He charged $300.00 per hour for the hours he spent working on the case and $250.00 per hour for his travel time. He discounted his fee for hours spent working on Plaintiffs' Motion for Summary Judgement because it was not granted. He also did not include fees for work done on the second appeal after the case became moot. After review of Mr. Linger's billing statement, the Court finds his billed hours to be reasonable. The total fee award for Mr. Linger is $54,320.00

10. I found Counsel for the Defendant to be very cooperative, professional, and helpful in reaching stipulations and agreements so that the case could be presented in an orderly and

5

concise manner so as to save time and be clearly understood as to the issues involved. I do feel that this saved some time and resulted in a good presentation to the Court.

11. In regard to my costs and expenses in the instant case, attached to this Affidavit are my costs and expense statements for the instant case, which are marked Plaintiffs' Exhibit "4", and incorporated in this Affidavit as though fully set forth herein. This statement reflects the following: (1) Certificate of Good Standing for James Carter Linger from the U.S. District Court for the Northern District of Oklahoma, which was necessary to support my *pro hac vice* motion, $19.00; (2) Fed-Ex to Whit Hyman, 3/27/2019, $27.68; (3) Notary fee—Richard Winger, 5/29/2019, $15.00; and (4) LaQuinta Inn, Little Rock, 6/03 – 6/04/2019, $71.01; for a total of non-taxable costs in the amount of $132.69. The above expenses all represent items which I normally bill my clients and which they pay. While I am not requesting reimbursement for copying expenses and long distance telephone expenses herein, because that is not my normal practice; I have in the past billed some of my corporate clients for such expenses when they have reached a substantial level. Further, I am not requesting the $433.74 I spent for airline fare and a hotel in St. Louis, Missouri for 12/10/2019 – to 12/11/2019 when I argued successfully before the U.S. Court of Appeals for the Eighth Circuit because I know from past experience that traveling expenses are not allowed in the Eighth Circuit, unlike other Circuits I have argued before.

12. In regard to my time sheets as reflected in Plaintiffs' Exhibit "3" herein, I feel that they are self-explanatory and are understandable when compared with my Affidavit and the Affidavit and time sheet filed contemporaneously herein by attorney W. Whitfield Hyman (Plaintiffs' Exhibit "1"). Mr. Hyman and I reviewed our time records for the purpose of discussing no charge hours, potential duplication and unnecessary work, the use of stipulations,

and the extent of necessary and significant work in the case at bar. I feel that the no charge hours of Mr. Hyman, the 13.0 no charge hours of myself, and other adjustments and reductions to our fee requests are reasonable and justified.

13. It is my belief that the hours reflected on my time sheets (Plaintiffs' Exhibit "3") were reasonably expended on behalf of my clients. Further, I believe the hours expended by attorney W. Whitfield Hyman were reasonably expended on behalf of our clients and were necessary for the presentation of the instant case and did not involve unnecessary duplication of work. I note that Mr. Hyman is requesting $250.00 per hour for his work. I feel this hourly rate is reasonable. I found Mr. Hyman to be a very good attorney who was very helpful in his role as local Counsel and in doing part of the trial work at the preliminary injunction hearing. While I feel I could request $350.00 an hour for my work in this case other than travel time because of my experience handling similar cases, I am only requesting $300.00 per hour for my election law work, and $250.00 per hour for my chargeable travel time between Tulsa, Oklahoma, and Little Rock, Arkansas, or St. Louis, Missouri, to the date of the filing of our Application for Attorney Fees. My opinion is based on my experience in my law practice and other civil rights and federal cases I have handled, as well as the guidelines laid down in the cases of *Hensley v. Eckerhart*, 461 U.S. 424, 76 L.Ed.2d 40, 103 S.Ct. 1933 (1983); *Farrar v. Hobby*, 506 U.S. 103, 121 L.Ed.2d 494, 113 S.Ct. 566 (1992); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974); *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983); *Keslar v. Bartu*, 201 F.3d 1016, 1018 (8th Cir. 2000); and *Warnock v. Archer*, 380 F.3d 1076 (8th Cir. 2004).

Further Affiant sayeth not.

/s/ James C. Linger
James C. Linger

STATE OF OLKAHOMA )
) ss.
COUNTY OF TULSA )

## OATH

Before me, the undersigned, a Notary Public in and for the State and County aforesaid, personally appeared James C. Linger, who, upon his oath, acknowledged that he has read the foregoing Affidavit and the statements therein are true to the best of his knowledge, information and belief.

Witness my hand and official seal on this 12th day of October, 2022.

/s/ Vickie L. Caudle
Notary Public

Commission (and Expiration):

(SEAL)



8